Moss, Judge,
delivered the opinion of the court:
On July 16, 1923, a contract was entered into by and between plaintiff, Johnstown Coal & Coke Company, and the Government of the United States, by which plaintiff agreed to supply coal to the Government at the Veterans’ Bureau Hospital at Locust Point, Maryland, at $3.00 per ton for the period from July 1, 1923, to June 30, 1924. The total quantity to be supplied was estimated at 8,200 tons, to be delivered in such quantities and at such times as the Government might direct through its officer in charge of said hospital. The Government actually ordered and there were delivered to it during the contract period only 1,400 tons. Plaintiff is suing for the recovery of $6,800, which is the difference between the contract price of the 6,800 tons not ordered and the market price of same, which it is agreed was $1.00 per ton.
The contract did not specify any particular time or times for the delivery of the coal. It was to be delivered as *620 ordered. The provision .of the contract on that point is as follows :
“The coal shall be delivered in such quantities at such times as the Government may direct. All available storage capacity of the Government coal bunkers shall be placed , at the disposal of the contractor to facilitate delivery of coal under favorable conditions. Deliveries shall be subject to the call of the officer in charge of the hospital or vocational school and made in the type of car that he requires and shall extend, when necessary, over the entire contractual period, July 1, 1923, to June 30, 1924, inclusive.”
The contract contained another provision which reads as follows :
“ The estimated quantity of coal in short tons of 2,000 pounds to be purchased is based upon the previous annual consumption, but the right is reserved to order a greater or less quantity, not to exceed fifty per cent, according to the actual requirements of the service.”
Orders were made at various times, and coal was delivered in response thereto, in the aggregate quantity of 1,400 tons. Plaintiff repeatedly requested permission to deliver the remainder of the coal called for by the contract, but no additional orders were made, nor* was plaintiff ever advised during the contract period that defendant did not intend to order further deliveries. After the expiration of the contract, and in response to a letter from plaintiff concerning defendant’s failure to fulfill its contract, and offering to deliver the remaining 6,800 tons, plaintiff was advised by letter of date July 24, 1924, that “ in the interest of the Government, the hospital at Locust Point was closed during the fiscal year 1924, and it was necessary to order only so much coal as would meet the requirements of the subdistrict office maintained at that point.” Reference was also made to the reserved right of the Government to order a greater or less quantity, not to exceed fifty per cent of the estimated quantity, with the assertion that the delivery of 4,100 tons would have constituted full performance of the contract. It was suggested, however, in said letter that plaintiff should agree to release the Government from further obligation under the contract. This was followed by a telegram dated August 9, 1924, in which it was stated, “ To effect amicable *621 agreement, bureau will consider placing order balance of fifty per cent of estimated amount which, is twenty-seven hundred tons.” This proposal was declined.
This was a requirement contract. The estimated quantity of 8,200 tons was “ based upon the previous annual consumption.” The Government reserved the right, however, to take as much as fifty per cent in excess of the estimated quantity, or, as much as fifty per cent less than the estimated quantity, “ according to the actual requirements of the service.”
Under the plain terms of the contract defendant was obligated to take the estimated quantity unless the actual requirements demanded a less quantity, and in that event, only to the extent of fifty per cent less than the estimated amount* Defendant had no arbitrary right to reduce the quantity in. any degree. Its right in that respect would depend on the actual requirements of the service, and the requirements of the service were peculiarly within the knowledge of defendant. There is no contention that plaintiff had any knowledge whatever during the contract period that defendant would require less than the estimated quantity of 8,200 tons. It was therefore necessary for plaintiff to be prepared during the entire period of the contract to deliver the full quantity. It should be noted in this connection that plaintiff was required to execute a bond for the faithful performance of the contract in the sum of $4,400.00, the amount being based on the estimated quantity of 8,200 tons, and an additional quantity of fifty per cent, or 12,300 tons. The market price of coal was reduced for the period in question from $3.00 to $2.00 per ton. Plaintiff being without fault in this transaction is entitled to* the benefits growing out of its contract with the Government, and defendant may not excuse itself from its obligation to take the estimated quantity of 8,200 tons except upon a showing that the actual requirements of the service demanded a less quantity. The burden on this point rests upon defendant, and it has introduced no evidence whatever.
Plaintiff is entitled to recover on the difference between the quantity of coal estimated in the contract — to wit, 8,200 tons — and the coal ordered and delivered — 1,408.10 tons— *622 at the rate of $1.00 per ton, $6,791.90. International Paper Co. v. Beacon Oil Co., 290 Fed. 45, 52, 53.
Sinnott, Judge; Giíeen, Judge; Gkaham, Judge; and Booth, Chief Justice, concur.